SEAN M. SULLIVAN (CA SBN 229104)
seansullivan@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone: 213.633.8644

CHASE BEAUCLAIR (CA SBN 327030)
chasebeauclair@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: 206.573.0566

Attorneys for Defendant iStockPhoto, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LARION KRAYZMAN, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ISTOCKPHOTO, L.P.,<br><br>Defendant. | Case No. 3:24-cv-03086-VC<br><br>**DEFENDANT ISTOCKPHOTO LP'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS**<br><br>Assigned to the Hon. Vince Chhabria<br><br>Date: September 5, 2024<br>Time: 10:00 AM<br><br>Action Filed: May 22, 2024 |

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on September 5, 2024, at 10:00 a.m. in Courtroom 4 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant iStockPhoto LP ("Defendant" or "iStock") will and hereby does move for an order compelling arbitration or dismissing with prejudice the Class Action Complaint (the "Complaint"), Dkt. No. 1, filed by Plaintiff Larion Krayzman ("Plaintiff") pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, Federal Rule of Civil Procedure 12(b)(6), and the doctrine of *forum non conveniens*.

This motion is made on the grounds that, as part of his subscription to iStock's services, Plaintiff is bound by various user agreements, including iStock's Privacy Policy, Terms of Use ("TOU") and Content License Agreement ("License Agreement"), and therefore agreed to (i) arbitrate all claims with respect to any dispute arising from or related to the License Agreement, including any matters related to the access to, use of, or download of any images or videos from the iStock Website; and/or (ii) with respect to any matters relating to access to, or use of the iStock Website governed by the TOU, the exclusive jurisdiction and venue of the courts of the Province of Alberta, and governing law of the Province of Alberta and the federal laws of Canada. By filing the complaint here, Plaintiff failed to adhere to the terms of the License Agreement and TOU.

This motion is based on this notice and motion, the attached memorandum, declaration and exhibits, and all pleadings, records, and files in this action, and such evidence and argument as may be presented at or before the hearing on this motion.

Dated: June 28, 2024

DAVIS WRIGHT TREMAINE LLP

By: /s/ Sean M. Sullivan
Sean M. Sullivan

Attorney for Defendant
ISTOCKPHOTO, LP

# TABLE OF CONTENTS


Page

I. PRELIMINARY STATEMENT ..... 1

II. STATEMENT OF FACTS ..... 2

A. Plaintiff Subscribed to iStock and Agreed to Arbitrate and/or Litigate in Alberta, Canada any Claims against iStock ..... 2

III. ARGUMENT ..... 3

A. Plaintiff's Claims are Subject to Arbitration ..... 3

1. The License Agreement is a Valid Enforceable Agreement ..... 4

2. Plaintiff Agreed to Arbitrate His Claims ..... 4

3. The Agreement to Arbitrate is a Broad Agreement That Encompasses the Claims in the Complaint ..... 6

a. The License Agreement Delegates Issues of Arbitrability to the Arbitrator ..... 7

b. Plaintiff's Claim Falls within the Broad Scope of the Arbitration Provision ..... 7

B. In the Alternative, the Court Should Dismiss Plaintiff's Claims Pursuant to the Forum Selection Clause in the TOU ..... 9

IV. CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Bruce Terminix Cos. v. Dobson*,
513 U.S. 265 (1995) .......... 4

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) .......... 11

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
785 F.3d 1320 (9th Cir. 2015) .......... 4

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 3

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .......... 8

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49 (2013) .......... 9, 10, 11

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) .......... 5

*Boardman v. Pac. Seafood Grp.*,
822 F.3d 1011 (9th Cir. 2016) .......... 4

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .......... 7

*Britton v. Co-op Banking Grp.*,
4 F.3d 742 (9th Cir. 1993) .......... 9

*Brooks v. Sotheby's*,
No. 13-cv-02183 RS, 2013 WL 3339356 (N.D. Cal. July 1, 2013) .......... 10

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) .......... 9

*Centrifugal Force, Inc. v. Softnet Commc'n, Inc.*,
No. 08 Civ. 5463(CM)(GWG), 2011 WL 744732 (S.D.N.Y. Mar. 1, 2011) .......... 5

*Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.*,
No. C-01-4203 MMC, 2003 WL 22682483 (N.D. Cal. Nov. 10, 2003) .......... 11

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) .......... 4, 6, 9

*Circuit City Stores v. Adams*,
532 U.S. 105 (2001) .... 4

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) .... 4

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) .... 8

*Crewe v. Rich Dad Educ., LLC*,
884 F. Supp. 2d 60 (S.D.N.Y. 2012) .... 6

*Dohrmann v. Intuit, Inc.*,
823 F. App'x 482 (9th Cir. 2020) .... 5

*Doyle v. P.A. Sports Authenticator*,
175 N.Y.S.3d 841 (N.Y. App. Term. 2022) .... 6

*Farmer v. BarkBox, Inc.*,
No. 522CV01574SSSSHKX, 2023 WL 8522984 (C.D. Cal. Oct. 6, 2023) .... 5

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) .... 4

*Fteja v. Facebook, Inc.*,
841 F. Supp. 2d 829 (S.D.N.Y. 2012) .... 5

*GDG Acquisitions, LLC v. Gov't of Belize*,
749 F.3d 1024 (11th Cir. 2014) .... 10

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .... 7, 8

*Gund v. Philbrook's Boatyard*,
374 F. Supp. 2d 909 (W.D. Wash. 2005) .... 11

*Hastings v. Nifty Gateway, LLC*,
No. 22 Civ. 10517 (AT), 2024 WL 1175196 (S.D.N.Y. Mar. 19, 2024) .... 5

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) .... 7

*Kai Peng v. Uber Techs., Inc.*,
237 F. Supp. 3d 36 (E.D.N.Y. 2017) .... 5, 6

*LP Digital Solutions v. Signifi Solutions, Inc.*,
921 F. Supp. 2d 997 (C.D. Cal. 2013) .... 12

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972) .... 9, 10, 11

*Martinez v. Rumble, Inc.*,
No. 8:22-cv-2237-SDM-AAS, 2023 WL 9473891 (M.D. Fl. Dec. 22, 2023) .................... 9, 12

*McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*,
858 F.2d 825 (2d Cir. 1988) .................... 8

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) .................... 5

*Micheli & Shel, LLC v. Grubhub Inc.*,
588 F. Supp. 3d 483 (S.D.N.Y. 2022) .................... 5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) .................... 3, 6, 8

*Monastiero v. appMobi, Inc.*,
2014 WL 1991564 (N.D. Cal. 2014) .................... 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .................... 4, 6

*Nationwide Gen. Ins. Co. v. Invs. Ins. Co. of Am.*,
332 N.E.2d 333 (N.Y. 1975) .................... 8

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .................... 7

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) .................... 10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) .................... 4

*Rainey v. A Place for Rover, Inc.*,
No. 2:22-CV-00403-RGK-E, 2022 WL 16942849 (C.D. Cal. July 18, 2022) .................... 5

*Revis v. Schwartz*,
140 N.Y.S.3d 68 (N.Y. App. Div. 2020), *aff'd*, 185 N.E.3d 496 (N.Y. 2022) .................... 8

*Rice Corp. v. Grain Bd. of Iraq*,
430 F. App'x 604 (9th Cir. 2011) .................... 11

*Richards v. Lloyd's of London*,
135 F.3d 1289 (9th Cir. 1998) .................... 10

*Rowen v. Soundview Commc'ns, Inc.*,
No. 14-cv-05530-WHO, 2015 WL 899294 (N.D. Cal. Mar. 2, 2015) .................... 12

*Russell v. De Los Suenos*,
2014 WL 1028882 (S.D. Cal. 2014) .................... 11

*Sadlock v. Walt Disney Co.*,
No. 22-CV-09155-EMC, 2023 WL 4869245 (N.D. Cal. July 31, 2023) .... 5

*Sandler v. iStockphoto LP*,
No. 2:15-cv-03659-SVW-JEM, 2016 WL 871626 (C.D. Cal. Feb. 5, 2016) .... 9

*Serrano v. Cablevision Sys. Corp.*,
863 F. Supp. 2d 157 (E.D.N.Y. 2012) .... 5

*Shklovskiy v. Khan*,
709 N.Y.S.2d 208 (App. Div. 2000) .... 6

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .... 9

*Solis v. ZEP LLC*,
No. 19cv4230 (JGK), 2020 WL 1439744 (S.D.N.Y. Mar. 24, 2020) .... 6

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
926 F.2d 865 (9th Cir. 1991) .... 10

*Starke v. Gilt Groupe, Inc.*,
No. 13 Civ. 5497(LLS), 2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) .... 5

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
559 U.S. 662 (2010) .... 3

*Ticotin v. Simon Prop. Grp., Inc.*,
735 N.Y.S.2d 54 (N.Y. App. Div. 2001) .... 8

*Zaimi v. Neiman Marcus Grp.*,
LLC, No. 222CV02972ABSKX, 2022 WL 19569536 (C.D. Cal. Aug. 31, 2022) .... 5

**Statutes**

9 U.S.C. § 2 .... 3

**Other Authorities**

JAMS Comprehensive Arbitration Rules and Procedures, Rule 11 .... 7

## I. PRELIMINARY STATEMENT

Plaintiff sued iStock—a Canadian company—in federal court in California for supposed violations of the Video Privacy Protection Act (the "VPPA") arising out of iStock's alleged use of a Facebook tool, the Meta Pixel, to advertise to iStock users on Facebook. Plaintiff contends that this common, well-known practice violates the VPPA by allegedly "disclosing" his and the putative classes' "personally identifiable information" to Facebook. Though the Complaint is woefully deficient for several reasons, the determinative issue here is that Plaintiff brought this case in the wrong forum. Disputes over interactions on the iStock Website are governed by terms that Plaintiff agreed to when signing up for iStock's services and, as a result, are either subject to arbitration in New York, New York or, in the alternative, subject to the exclusive jurisdiction of Alberta, Canada.

The threshold issue is that Plaintiff agreed to arbitrate "[a]ny disputes arising from or related to" the use of, or download of iStock's content. Because Plaintiff's (and the entire purported class's) claims relate to Plaintiff's use of iStock's content (*i.e.* when he "watches and downloads videos on iStock"), Complaint at ¶ 58, he is subject to the binding arbitration provision in the Content License Agreement ("License Agreement") and Plaintiff should be compelled to arbitration in New York, New York.

Alternatively, to the extent the License Agreement does not bar Plaintiff's claims before this Court (which it does), then this case is subject to dismissal for *forum non conveniens* because Plaintiff agreed to a binding forum selection clause to bring this suit in Alberta, Canada. In the Terms of Use ("TOU"), Plaintiff agreed that "any claims or disputes whatsoever arising hereunder shall be submitted to the exclusive jurisdiction and venue of the courts of the Province of Alberta[.]" Clauses of this nature carry near-determinative weight, except in unusual circumstances, and mandate dismissal on *forum non conveniens* grounds. Plaintiff here cannot show unusual circumstances to warrant ignoring the parties' agreement. In the event this Court does not compel arbitration, the Court should dismiss in deference to the agreed Alberta forum.

## II. STATEMENT OF FACTS

### A. Plaintiff Subscribed to iStock and Agreed to Arbitrate and/or Litigate in Alberta, Canada any Claims against iStock

iStock operates a stock video subscription service by which its users can watch, license, and download prerecorded videos. Complaint ¶ 16. iStock does not require users to sign up for a subscription to view any of the videos on the iStock Website. A subscription is only required in order to license and reuse such video. In April 2024, Plaintiff purchased the right to license content using a subscription on iStock. *Id.* at ¶ 54; *see also* Declaration of Grant Farhall ("Farhall Decl."), ¶ 5.

In doing so, Plaintiff consented to various user agreements, including iStock's Privacy Policy, the TOU and the License Agreement. The Complaint attaches a screenshot showing the subscription page and pricing information available at the iStock Website. Complaint ¶ 4. Fig. #1. When a user clicks the "Subscribe" button found on that page for the "Premium+Video" subscription service that user is taken to the checkout page. Farhall Decl., ¶ 5. As shown in the screenshot below, at the bottom of that page, after a user creates a username and password, fills out their billing and payment information and selects a billing schedule (e.g. monthly or annually), a user is presented with a screen that clearly states that by clicking "I agree – Pay now" the user is accepting and agreeing to iStock's Privacy Policy and TOU found at the links provided, and which links lead to a landing page that contain iStock's Privacy Policy, TOU and License Agreement:




Farhall Decl., Ex. A. Plaintiff followed each of these steps and therefore accepted and agreed to iStock's Privacy Policy, TOU and License Agreement. *Id.* at ¶ 5.

The License Agreement governs the access to, use of, or download of any images or videos from the iStock Website. *See generally*, *Id.*, Ex. B. Under the License Agreement, Plaintiff agreed that "[a]ny disputes arising from or related to this agreement shall be finally settled by binding, confidential arbitration by a single arbitrator selected using the rules and procedures for arbitrator selection under the JAMS' Expedited Procedures in its Comprehensive Arbitration Rules and Procedures ('JAMS') if you are in North America…." *Id.* (Governing Law/Arbitration). Plaintiff also agreed that any arbitration would "be held in one of the following jurisdictions (whichever is closest to you): New York, New York; London, England; Paris, France; Munich, Germany; Madrid, Spain; Milan, Italy; Sydney, Australia; Tokyo, Japan; or Singapore." *Id.* Accordingly, the License Agreement requires that Plaintiff arbitrate all claims relating to the access, use and download of content from iStock in New York.

Alternatively, under the TOU, Plaintiff agreed that "all matters relating to access to, or use of this Web site [sic] shall be governed by the laws of the Province of Alberta and the federal laws of Canada applicable therein (without reference to conflicts of laws principles)." *Id* at Ex. C (Applicable law). He further agreed that "any claims or disputes whatsoever arising hereunder shall be submitted to the exclusive jurisdiction and venue of the courts of the Province of Alberta and acknowledge that you do so voluntarily." *Id*. Thus, any claims relating to the access to or use of the iStock Website are subject to the exclusive jurisdiction of Alberta, Canada.

## III. ARGUMENT

### A. Plaintiff's Claims are Subject to Arbitration

The Federal Arbitration Act makes agreements to arbitrate "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration" and reinforces the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). The FAA requires courts to "'rigorously enforce'" agreements to arbitrate, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985), to ensure that private agreements to arbitrate "'are enforced according to their terms.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).

On a motion to compel arbitration, a district court must determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party seeking to compel arbitration has the burden under the FAA to show these two elements. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). However, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

**1. The License Agreement is a Valid Enforceable Agreement**

The FAA applies to any written arbitration agreement that involves interstate commerce. *Circuit City Stores v. Adams*, 532 U.S. 105, 112-13 (2001); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401-02 & n.7 (1967). Congress intended to "'exercise [its] commerce power to the full'" in the arbitration context, setting a very low bar for showing an effect on commerce. *Circuit City*, 532 U.S. at 112 (quoting *Allied Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277 (1995)). The FAA incorporates "the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003).

The interstate commerce requirement is satisfied for purposes of arbitration any time the agreement either facilitates or affects commerce in some way, directly or indirectly. *Prima Paint*, 388 U.S. at 401-02. In this case, Plaintiff admits in the Complaint that iStock is a Canadian company that has users around the world and uses the internet to distribute its content. Complaint ¶ 11. Plainly the interstate commerce requirement is satisfied.

**2. Plaintiff Agreed to Arbitrate His Claims**

In determining whether the parties have agreed to arbitrate, the Court should "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In particular, a court should look to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1018 (9th Cir. 2016) (citation omitted).

Under New York law,[1] and throughout the country, courts routinely enforce online license agreements where, as here, a consumer clicks an icon to manifest their assent to the terms. *See, e.g. Hastings v. Nifty Gateway, LLC*, No. 22 Civ. 10517 (AT), 2024 WL 1175196, at *4 (S.D.N.Y. Mar. 19, 2024) (enforcing arbitration provision under New York law where sign-up page on platform contained reasonably conspicuous notice of arbitration agreement in hyperlinked terms of use); *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 47-50 (E.D.N.Y. 2017) (finding plaintiff unambiguously assented to hyperlinked Terms of Service, including arbitration clause and class waiver, by clicking registration button); *Starke v. Gilt Groupe, Inc.*, No. 13 Civ. 5497(LLS), 2014 WL 1652225, at *3-4 (S.D.N.Y. Apr. 24, 2014) (same); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (enforcing forum selection clause in agreement where users were warned that "By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service."); *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 164 (E.D.N.Y. 2012) (Internet contracts "are enforced under New York law as long as the consumer is given a sufficient opportunity to read the . . . agreement, and assents thereto after being provided with an unambiguous method of accepting or declining the offer."); *Centrifugal Force, Inc. v. Softnet*

---

[1] The License Agreement includes a choice-of-law provision indicating that the agreement is governed by New York law. Farhall Decl., Ex. B, at 19 (Governing Law/Arbitration). Even assuming that the contract was governed under the laws of California, the result is the same. *See, e.g., E.g., Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (applying California law and finding notice was reasonable when users were given a nearly identical "warning"); *Micheli & Shel, LLC v. Grubhub Inc.*, 588 F. Supp. 3d 483, 491–92 (S.D.N.Y. 2022) (enforcing arbitration agreement containing similar initial warning); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020) (finding same with click through "Sign In" button with near identical language appearing below button to be enforceable); *Sadlock v. Walt Disney Co.*, No. 22-CV-09155-EMC, 2023 WL 4869245, at *11 (N.D. Cal. July 31, 2023) (discussing *Dohrmann* with approval and describing Intuit's flow as an example of "conspicuous" terms); *Rainey v. A Place for Rover, Inc.*, No. 2:22-CV-00403-RGK-E, 2022 WL 16942849, at *2 (C.D. Cal. July 18, 2022) (referencing *Dohrmann* as a case where "a website conspicuously highlights its terms"); *Farmer v. BarkBox, Inc.*, No. 522CV01574SSSSHKX, 2023 WL 8522984, at *3 (C.D. Cal. Oct. 6, 2023); *Zaimi v. Neiman Marcus Grp.*, LLC, No. 222CV02972ABSKX, 2022 WL 19569536, at *3 (C.D. Cal. Aug. 31, 2022) ("Because Defendant's notice is virtually identical to those in *Ticketmaster* and *Intuit*, this Court finds that Plaintiff constructively assented to the arbitration clause in Defendant's Privacy Policy & Terms of Use each time she signed into her account").; *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 397 (E.D.N.Y. 2015) (applying California law and stating "[c]lickwrap agreements necessitate an active role by the user" and thus "[c]ourts, in general, find them enforceable.").

*Commc'n, Inc.*, No. 08 Civ. 5463(CM)(GWG), 2011 WL 744732, at *7 (S.D.N.Y. Mar. 1, 2011) ("In New York, clickwrap agreements are valid and enforceable contracts.").[2]

As noted above, Plaintiff affirmatively agreed to the License Agreement, and the arbitration provision therein, when he purchased the right to license content using a subscription on iStock. He had to click a button that stated "I agree – Pay now" before he could subscribe, and immediately above that button was the statement that "[b]y joining iStock, you accept our Privacy Policy and Terms of Use," with both "Privacy Policy" and "Terms of Use" presented in a different color from the surrounding text and both of which hyperlinked to the iStock License Agreement, TOU and Privacy Policy. It makes no difference whether or not Plaintiff read the License Agreement, he is bound regardless. *See, e.g.*, *Doyle v. P.A. Sports Authenticator*, 175 N.Y.S.3d 841, 843 (N.Y. App. Term. 2022) (enforcing forum selection clause in part because "[a] party that signs a document is conclusively bound by its terms absent a valid excuse for having failed to read it"); *Solis v. ZEP LLC*, No. 19cv4230 (JGK), 2020 WL 1439744, at *4 (S.D.N.Y. Mar. 24, 2020) (Under New York law, "a party will not be excused from his failure to read and understand the contents' of a contract and thus someone who signs a document without any valid excuse for having failed to read it is conclusively bound by its terms.") (citing *Shklovskiy v. Khan*, 709 N.Y.S.2d 208, 209 (App. Div. 2000)) (internal quotation marks omitted); *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 73 (S.D.N.Y. 2012) (enforcing arbitration agreement and noting that "under . . . New York law, a customer does not have the right to avoid a contract on the ground that he did not read it") . Plaintiff thus entered into a valid agreement to arbitrate and is bound by the terms therein.

#### 3. The Agreement to Arbitrate is a Broad Agreement That Encompasses the Claims in the Complaint

Upon finding the existence of a valid and enforceable agreement to arbitrate, the court must consider whether the dispute falls within the scope of the arbitration agreement. *Mitsubishi*, 473 U.S. at 626; *Chiron Corp.*, 207 F.3d at 1130. "'[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Chiron Corp.*, 207 F.3d at 1131 (quoting *Moses*

[2] As noted by the court in *Kai Peng*, it does not matter whether the agreement in question is termed a "click-wrap," sign-in wrap" or "browse-wrap" agreement, because "under any definition, agreements like this one routinely are upheld." 237 F. Supp. 3d at 47, n.11.

*H. Cone*, 460 U.S. at 24-25). The party resisting arbitration bears the burden of showing the agreement does not cover the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91-92 (2000).

**a. The License Agreement Delegates Issues of Arbitrability to the Arbitrator**

The License Agreement expressly incorporates by reference JAMS' Comprehensive Arbitration Rules and Procedures and therefore delegates any threshold questions or arbitrability to the arbitrator. Farhall Decl., Ex. B, at 20 (Governing Law/Arbitration). "[I]f a valid [arbitration] agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue," and must compel arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). When parties "by 'clear and unmistakable' evidence" delegate issues of arbitrability to an arbitrator, "the courts must respect the parties' decision as embodied in the contract" and send the issue to the arbitrator to decide. *Id.* at 69, 71.

An arbitration agreement "clearly and unmistakably" delegates arbitrability to the arbitrator where, as here, it incorporates arbitration rules that give the arbitrator the authority to decide arbitrability. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In this case, Rule 11 of the JAMS Comprehensive Arbitration Rules and Procedures expressly provides that "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator."[3] Accordingly, whether the claims in the Complaint fall within the scope of the arbitration agreement has been delegated exclusively to the arbitrator. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) ("[i]ncorporation of the JAMS arbitration rules by reference constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability.").

**b. Plaintiff's Claim Falls within the Broad Scope of the Arbitration Provision**

Even if the Court were to consider the scope of the arbitration provision—despite the parties' clear and unmistakable delegation to the arbitrator—Plaintiff's claims fall squarely within

[3] Available at Comprehensive Arbitration Rules and Procedures | JAMS Mediation, Arbitration, ADR Services (jamsadr.com).

the License Agreement's broad arbitration provision.. The congressional policy favoring arbitration requires courts "liberally to construe the scope of arbitration agreements covered by that Act." *Mitsubishi*, 473 U.S. at 627. "[T]he party resisting arbitration bears the burden of proving that [the dispute is] unsuitable for arbitration." *Green Tree*, 531 U.S. at 91. Thus, an "'order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Where, as here, an arbitration clause is broad, courts presume arbitrability. *Id.*

Here, the License Agreement expressly requires arbitration of "any disputes arising from or related to" the Agreement. Farhall Decl., Ex. B, at 19-20 (Governing Law/Arbitration). This prototypically broad arbitration provision is not subject to any limitations and therefore plainly covers plaintiff's claim against iStock, which alleges that iStock violated the VPPA by sharing his and putative class members' Personally Identifiable Information with Meta when the users viewed or downloaded the content expressly governed by the License Agreement. Complaint ¶¶ 21-22, 57-58. *See, e.g.*, *Revis v. Schwartz,* 140 N.Y.S.3d 68, 74 (N.Y. App. Div. 2020), *aff'd,* 185 N.E.3d 496 (N.Y. 2022) ("Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended. Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration.") (quoting *Nationwide Gen. Ins. Co. v. Invs. Ins. Co. of Am.*, 332 N.E.2d 333, 335 (N.Y. 1975)) (internal citations omitted); *Ticotin v. Simon Prop. Grp., Inc.*, 735 N.Y.S.2d 54, 55 (N.Y. App. Div. 2001) ("The arbitration clause here is a broad one; to exclude a substantive issue would have required specific enumeration in the arbitration clause itself[.]"); *see also Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause. . . . [T]hese claims are presumptively arbitrable."); *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) ("If a court concludes that a clause is a broad one, then it will order

arbitration and any subsequent construction of the contract and of the parties' rights and obligations under it are within the jurisdiction of the arbitrator.").[4]

**B. In the Alternative, the Court Should Dismiss Plaintiff's Claims Pursuant to the Forum Selection Clause in the TOU**

Even if Plaintiff's claim were not subject to the arbitration provision in the License Agreement (it is), then Plaintiff is bound by the forum selection clause in the TOU and the Court should dismiss Plaintiff's claim for filing his lawsuit in the wrong forum. *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 59-60 (2013); *Martinez v. Rumble, Inc.*, No. 8:22-cv-2237-SDM-AAS, 2023 WL 9473891, at *2-4 (M.D. Fl. Dec. 22, 2023) (dismissing VPPA class action on the basis of a forum selection clause selecting Ontario, Canada as the exclusive forum); *see also Sandler v. iStockphoto LP*, No. 2:15-cv-03659-SVW-JEM, 2016 WL 871626, at *3 (C.D. Cal. Feb. 5, 2016) (dismissing class complaint alleging California UCL claims on *forum non conveniens* grounds finding plaintiffs who signed up were bound by iStock's forum selection clause designating Canada as the proper venue for all claims). As detailed above, when Plaintiff purchased the right to license content using a subscription on iStock, Plaintiff agreed "that any claims or disputes whatsoever arising [from their use of the iStock Website] shall be submitted to the exclusive jurisdiction and venue of the courts of the Province of Alberta[.]" Farhall Decl. Exs. C, at 9 (Applicable Law). Plaintiff failed to abide by this agreement.

Forum-selection clauses are "an indispensable element" in commerce, allowing parties to "agree[] in advance on a forum acceptable" to them. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 13-14 (1972). This has "the salutary effect of dispelling any confusion about where suits arising from the contract must be brought and defended, sparing litigants the time and expense of pretrial motions to determine the correct forum and conserving judicial resources that otherwise would be devoted to deciding those motions." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991). To protect the expectations of the parties, "a [valid] forum-selection clause [should] be 'given controlling weight in all but the most exceptional cases.'" *Atl. Marine*, 571 U.S. at 59-

[4] The law of this circuit is in accord. As the Ninth Circuit recognizes, "all disputes" clauses of this sort are "broad and far reaching" in scope, *Chiron Corp.*, 207 F.3d at 1131, and are "routinely used . . . to secure the broadest possible arbitration coverage," *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745 (9th Cir. 1993). Such clauses require arbitration of all disputes that "touch matters" covered by the parties' contract. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).

60. Where parties have agreed to a forum-selection clause, a "plaintiff's choice of forum merits no weight," and the Court "should not consider arguments about the parties' private interests." *Id*. at 64 (emphasis added). "[T]he Supreme Court in *Atlantic Marine* explained that an enforceable forum-selection clause carries near-determinative weight." *GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014). It makes no difference that plaintiffs agreed to litigate in Canada instead of the United States. "[T]here is 'no basis for a judgment that only . . . United States courts should determine this controversy in the face of a solemn agreement between the parties that such controversies be resolved elsewhere.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1295 (9th Cir. 1998) (citation omitted) (enforcing clause selecting England as forum for resolving disputes over underwriting agreements).

Where, as here, a party "conducts a business that, by its nature, exposes it to potential litigation in different fora from plaintiffs from many locales," that party "ha[s] a special interest in limiting the fora in which [it] might defend suit." *Brooks v. Sotheby's*, No. 13-cv-02183 RS, 2013 WL 3339356, at *5 (N.D. Cal. July 1, 2013) (enforcing clause selecting England as forum as to claims against auction house arising from purchase of art allegedly stolen by Nazis); *see also Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868-69 (9th Cir. 1991) (clause in employment agreement selecting Saudi Arabia forum did not deprive plaintiff of his day in court, even though Saudi Arabia has a significantly different judicial system). Under *Atlantic Marine*, this Court should enforce the forum selection clause unless plaintiffs show (1) public interest factors militate against dismissal, or (2) the clause itself "violates fundamental fairness or is the result of fraud or overreaching." *Brooks*, 2013 WL 3339356, at *2 (analyzing factors under *Bremen*, 407 U.S. at 15); *Atl. Marine*, 571 U.S. at 62 n.6. Plaintiffs can demonstrate neither.

**Public Interest**. Public interest factors will "rarely defeat" a forum-selection clause. *Atl. Marine*, 571 U.S. at 64. "[T]he practical result is that forum-selection clauses should control except in unusual cases." *Id*. Public interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). None of

the public interest factors render this case so "unusual" the Court should decline to enforce the forum-selection clause:

Although California has an interest because Plaintiff lives here, that interest is slight given that Plaintiff chose to purchase the right to license content using a subscription from a company based in Alberta, Canada, which does business worldwide. Even if this factor weighed against dismissal, Plaintiff could still not carry his "heavy burden to show that these are 'extraordinary circumstances unrelated to the convenience of the parties' that would warrant denial of the *forum non conveniens* motion." *Monastiero v. appMobi, Inc.*, 2014 WL 1991564, at *4-5 (N.D. Cal. 2014) (quoting *Atl. Marine*, 571 U.S. at 62) (enforcing forum-selection clause despite California's interest in protecting rights of California residents).

"[T]here is no reason to conclude the courts are significantly more congested . . . in Canada." *Chateau Des Charmes Wines Ltd. v. Sabate USA, Inc.*, No. C-01-4203 MMC, 2003 WL 22682483, at *8 (N.D. Cal. Nov. 10, 2003); *see also Gund v. Philbrook's Boatyard*, 374 F. Supp. 2d 909, 914 (W.D. Wash. 2005) (same).

Even assuming Plaintiff's claims involved California law, rather than the single federal law claim that is asserted in the Complaint, this Court's familiarity with California law would be insufficient to rebut the presumption favoring enforcement of the forum-selection clause. *Russell v. De Los Suenos*, 2014 WL 1028882, at *5 (S.D. Cal. 2014) (enforcing Mexico forum selection clause; "even if California law would apply … dismissal would be appropriate").

**Fundamental Fairness**. Nor can Plaintiff show the forum-selection clause to which he agreed violates fundamental fairness principles. Under *Bremen*, a forum selection clause is "prima facie valid and should not be set aside unless the party challenging enforcement of such a provision can show it is 'unreasonable' under the circumstances." *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324-25 (9th Cir. 1996) (citing *Bremen*, 407 U.S. at 10). Courts construe this exception "narrowly." *Id*. To establish unreasonableness of a forum selection clause, the party challenging it bears "a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party effectively would be denied a meaningful day in court." *Rice Corp. v.*

*Grain Bd. of Iraq*, 430 F. App'x 604, 605 (9th Cir. 2011) (internal quotations omitted); *see also Bremen*, 407 U.S. at 17.

Plaintiff cannot meet this burden, as he may meaningfully litigate his claim in Alberta, a venue closer to him than many alternative fora in the United States. *See, e.g.*, *LP Digital Solutions v. Signifi Solutions, Inc.*, 921 F. Supp. 2d 997, 1008 (C.D. Cal. 2013) ("While the burden for plaintiff of litigating in Canada will no doubt be greater than the burden of litigating in California, this alone does not support a finding that plaintiff will be effectively deprived of its day in court."); *Rowen v. Soundview Commc'ns, Inc.*, No. 14-cv-05530-WHO, 2015 WL 899294, at *4 (N.D. Cal. Mar. 2, 2015) (rejecting claim California's interest in enforcing its own law rendered Georgia forum-selection clause unreasonable because "choice-of law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy"). The iStock forum-selection clause is enforceable, and the Court should dismiss the Complaint under the doctrine of *forum non conveniens*.

At least one other court examining this precise issue, considering whether to enforce a forum selection clause designating Canada as the exclusive jurisdiction in the context of VPPA claims related to use of Meta Pixel, has reached the same result. *See, e.g.*, *See Martinez v. Rumble, Inc.*, No. 8:22-CV-2237-SDM-AAS, 2023 WL 9473891, *2-4 (M.D. Fl., Dec. 22, 2023) (dismissing VPPA class action on the basis of a forum selection clause selecting Ontario, Canada as the exclusive forum). As here, *Martinez* involved a putative class action case similarly involving claims under the VPPA relating to the use of the Meta Pixel and a plaintiff that had entered into an agreement with the defendant containing a forum selection clause specifying application of the law of Ontario, Canada, and the exclusive jurisdiction of the courts in Ontario, Canada. In granting summary judgment for Rumble, Inc. on the basis of the forum selection clause, the court underwent an extensive analysis of comparative laws in Canada and the relative burdens on the parties, among other points, finding the forum selection clause valid and mandatory. *Id.* at *4. The same result is required here.

## IV. CONCLUSION

For the reasons stated, this Court should order Plaintiff to arbitrate his claims pursuant to the License Agreement or dismiss his claims pursuant to the TOU on *forum non conveniens* grounds.

Dated: June 28, 2024

DAVIS WRIGHT TREMAINE LLP

By: /s/ Sean M. Sullivan
Sean M. Sullivan

Attorney for Defendant
ISTOCKPHOTO, LP