JULIAN HAMMOND (SBN 268489)
jHammond@hammondlawpc.com
ADRIAN BARNES (SBN 253131)
abarnes@hammondlawpc.com
POLINA BRANDLER (SBN 269086)
pbrandler@hammondlawpc.com
ARI CHERNIAK (SBN 290071)
acherniak@ammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
Tel. (310) 601-6766
Fax (310) 295-2385

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| **LARION KRAYZMAN,** individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**ISTOCKPHOTO, L.P.**,<br><br>Defendant. | Case No.: 3:24-cv-03086-VC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS**<br><br>Date: September 5, 2024<br>Time: 10:00 A.M.<br>Courtroom: 4<br><br>Action Filed: May 22, 2024 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ii

TABLE OF AUTHORITIES iii

I. INTRODUCTION 1

II. RELEVANT FACTS 3

III. LEGAL STANDARD 4

IV. ARGUMENT 5

- A. The Arbitration Agreement in the License Agreement is Not Enforceable 5
  - 1. Plaintiff Krayzman Never Agreed to Arbitrate His Claims 5
  - 2. The License Agreement Cannot Be Reasonably Read to Apply to Plaintiff's Claims 7
  - 3. The Delegation and Arbitration Agreements are Unconscionable 9
    - a. The Delegation Clause is Unconscionable 10
    - b. The Arbitration Agreement is Unconscionable 12
- B. The Forum Selection Clause in the TOU is Unenforceable 13

V. CONCLUSION 15

## TABLE OF AUTHORITIES

**Cases**

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83 (2000) .......... 13

*Attia v. Oura Ring, Inc.*, 2024 WL 1382464 (N.D. Cal. Apr. 1, 2024) .......... 7, 9

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) .......... 14

*Brown v. Quantas Corp.,* 2019 WL 6727503 (N.D. Cal. Dec. 11, 2019) .......... 12

*Chin v. Advanced Fresh Concepts Franchise Corp.,* 194 Cal.App.4th 704 (2011) .......... 13

*Fitz v. NCR Corp.,* 118 Cal.App.4th 702 (2004) .......... 12

*Flora v. Prisma Labs, Inc.*, 2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) .......... 11

*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014) .......... 5

*Gountoumas v. Giaran, Inc.,* 2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) .......... 11

*Jaiswal v. Dickey's Barbecue Restaurants, Inc.*, 2024 WL 607370 (C.D. Cal. Jan. 18, 2024) .......... 7

*Johnson v. Walmart Inc.*, 57 F.4th 677 (9th Cir. 2023) .......... 5, 8, 9

*Kilgore v. KeyBank Nat' l Ass'n*, 718 F.3d 1052 (9th Cir. 2013) .......... 5

*LG Elecs. Inc. v. Fritz Transp. Int'l*, 2001 WL 1843715 (N.D. Cal. Oct. 2, 2001) .......... 2, 5, 13

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) .......... 13

*Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257 (9th Cir. 2006) .......... 11, 13

*Newton v. American Debt. Services, Inc.,* 549 Fed. Appx. 692 (9th Cir. 2013) .......... 12

*Nguyen v Barnes & Noble.*, 763 F.3d 1171 (9th Cir. 2014) .......... 6

*Nguyen v. OKCoin USA Inc.*, 2023 WL 2095926 (N.D. Cal. Feb. 17, 2023) .......... 11

*Ontiveros v DHL Express (USA),* 164 Cal.App.4th 494 (2008) .......... 12

*OTO, LLC v. Kho,* 8 Cal. 5th 111 (2019) .......... 10

*Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627 (9th Cir.1982) .......... 5

*Ragab v. Howard*, 841 F.3d 1134, 1136 (10th Cir. 2016) .......... 14

*Sanchez v. Valencia Holding Co., LLC,* 61 Cal. 4th 899 (2015) .......... 11

*See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) .......... 6

*The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1 (1972) .......... 5, 13

*Three Valleys Mun. Water Dist. v E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir 1991)....5
*Ting v. AT&T,* 319 F.3d 1126 (9th Cir. 2003)....12
*Tiri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231 (2014)....10
*Wilson v. Huuuge, Inc*., 944 F.3d 1212 (9th Cir. 2019)....6, 7

**Statutes**

18 U.S.C. § 2710(c)....12
Cal. Civ. Proc. Code § 1021.5....12

Defendant iStockPhoto LP's ("Defendant" or "iStock") Motion to Compel Arbitration or in the Alternative Dismiss (the "Motion" or "MTC") should be denied for three reasons. First, an agreement to arbitrate was never formed, because Plaintiff never agreed to the License Agreement containing the arbitration agreement, nor does the License Agreement govern this dispute. Second, both the delegation clause contained in the arbitration agreement and the arbitration agreement itself are procedurally and substantively unconscionable. Third, the enforcement of an unlawful forum selection clause contained in an entirely separate agreement (iStock's Terms of Use ("TOU")), offered as a "backup option" to Defendant's primary claim that the licensing agreement controls the jurisdiction in this case, would be an unreasonable overreach.

## I. INTRODUCTION

iStock wants this Court to allow it to handpick the forum in which it resolves each legal dispute, depending on where it thinks iStock will fare best on a particular claim. The legal gymnastics iStock engages in to reach this level of forum shopping is dizzying.

iStock has set forth a menu of forum options for itself in three separate agreements: its License Agreement, its Privacy Policy, and its TOU—each of which designates a wholly different forum and choice of law. Specifically: (i) the Content License Agreement (the "License Agreement") requires JAMS arbitration under New York law in New York; (ii) the Privacy Policy incorporates the Privacy Policy of iStock's Seattle-based parent company, Getty Images (US), Inc. ("Getty") (the "Getty Privacy Policy"), which contains a permissive forum selection clause in the US (with no state specified); and (iii) the TOU dictates that the governing laws are the Province of Alberta and the laws of Canada, and that "any claims or disputes are subject to the exclusive jurisdiction and venue of the Alberta courts."

iStock first seeks to compel Plaintiff to JAMS arbitration in New York—having apparently decided that, in this case, its License Agreement provides the forum most favorable to iStock. The problems with that argument abound. As a preliminary matter, a court cannot compel parties in California to arbitrate in another state. More fundamentally, iStock must show that Plaintiff agreed to arbitrate his claims under the License Agreement. But contrary to iStock's representations in its motion and declaration, the License Agreement was not hyperlinked (let alone even ***mentioned***) on the checkout page when Plaintiff purchased his subscription. Thus, Plaintiff cannot be bound by its terms.

iStock's claim that Plaintiff's Video Privacy Protection Act ("VPPA") claim falls within the License Agreement is also improper. The License Agreement only applies to a narrow subset of videos a subscriber licenses from iStock and then "uses." It makes clear that the term "use" is intended to cover published content, not personal viewing or downloads (*i.e.*, the content that forms the basis for Plaintiff's Complaint). Moreover, both the delegation clause and arbitration agreement within the License Agreement are unenforceable because they are unconscionable for a variety of reasons explained below.

iStock knows full well it cannot succeed in forcing Plaintiff to arbitration. So, it offers a "backup option." iStock argues that, if the Court won't compel arbitration under the License Agreement, Plaintiff must be sent to court in Alberta, Canada, pursuant to its TOU. This claim also fails. Enforcing the TOU's forum selection clause of a foreign court as a backup plan to US arbitration would be fundamentally unfair. Where defendants have crafted multiple agreements to allow themselves to choose their forum at will—and here, there are three—courts have declined to transfer and instead honored the plaintiff's choice of forum. *See, e.g., LG Elecs. Inc. v. Fritz Transp. Int'l*, 2001 WL 1843715, at *2 (N.D. Cal. Oct. 2, 2001) (declining to apply forum selection agreement that "allows defendant to choose among six fora at will").

If anything, a reasonable consumer accessing iStock's website would be led to believe that any disputes with iStock should be resolved with Getty Images (US), Inc., which its website identifies as a United States company. Indeed, this is exactly what iStock's Privacy Policy—which is hyperlinked on the subscription checkout page right next to the TOU—directs. In its Privacy Policy, iStock indicates that the relevant entity contracting with US customers like Plaintiff and the putative class is Getty Images (US), Inc., and instructs US customers with any privacy-related disputes to contact its legal department in Seattle, Washington—not Albert, Canada. iStock's License Agreement similarly makes clear that iStock's US Customers are contracting with Getty Images (US), Inc., while its customers in Canada are contracting with Getty Images (Canada), Inc. *See* Declaration of Grant Farhall ISO Def's MTC ("Farhall Decl."), Ex. B and Declaration of Polina Brandler ISO Opp. To Def's MTC ("Brandler Decl.), Ex. A. And, while in this specific case, iStock is doing anything it can to distance itself from its US parent company to prevent its US customers from obtaining redress in the US, Getty has taken the precise opposite position in other public court filings. *See* Brandler Decl., Ex. B (*Getty Images (US), Inc. v. Stability AI, Ltd.,* No. 23-cv-00135, Dkt. 13 (D. Del. Mar. 29, 2023)) ("Getty Images makes hundreds of

millions of visual assets available to customers throughout the world and in this District [Delaware] via websites, including but not limited to www.gettyimages.com and www.istock.com").

Simply put, a defendant does not get to tell its customers (and this Court): "I choose JAMS arbitration in New York under New York law, but if that doesn't work, US plaintiffs should be forced to litigate in Alberta, Canada courts under Canadian law—even though my website says that US customers are contracting with a US entity." iStock's Motion should be denied.

## II. RELEVANT FACTS

This is a case about iStock's unlawful disclosure of Plaintiff's and Class Members' private information about their personal video-viewing habits and activities in violation of the Video Privacy Protection Act ("VPPA"). iStock owns and operates a web-based paid subscription service which provides a library of over one million prerecorded videos to its customers.[1] iStock knowingly discloses its subscribers' personally identifiable information ("PII")—including a record of every video clip they view or download—without their consent to an unauthorized third party, Meta (formerly known as Facebook), through Meta's tracking software (the Meta Pixel) embedded by Defendant on iStock's website. *See* Complaint ("Compl.") ¶¶ 35–52. Plaintiff Larion Krayzman is a California resident who has had a Facebook account since 2004 and a digital subscription to iStock since April 2024, which he uses to watch and download prerecorded videos. *Id.* ¶¶ 8, 53–55. When Plaintiff purchased his subscription, he agreed to iStock's Terms of Use ("TOU") and Privacy Policy, pursuant to a clickwrap agreement. *See* Farhall Decl., Ex. A (checkout page), Ex. C (February 2024 TOU); Brandler Decl., Ex. C (June 2018 Privacy Policy).[2] Neither the TOU nor the Privacy Policy, the only things Plaintiff and Class Members are asked to accept or agree to, contains ***any*** arbitration agreement whatsoever. Brandler Decl. ¶¶ 6, 8.

And iStock's License Agreement is not mentioned, nor does it appear, anywhere on the checkout page or anywhere else in subscription process. Instead, when subscribers click "I agree – Pay now," they explicitly agree only that: "By joining iStock, you accept our ***Privacy Policy and Terms of Use***[.]" Brandler Decl. ¶ 8 and Farhall Decl., Ex. A (emphasis added). The words "Privacy Policy" and "Terms

[1] *See* https://www.istockphoto.com/videos-free (Last visited July 3, 2024).

[2] iStock's Privacy Policy was updated in July 2024, but a copy of the Policy in effect at the time Plaintiff subscribed is available on the Wayback Machine and is attached as Ex. C to Brandler Decl.

of Use" are hyperlinked to webpages for each respective agreement.[3] Brandler Decl. ¶¶ 8, 13.

By contrast, the License Agreement is an entirely separate legal agreement that appears on its own webpage.[4] *See* Farhall Decl., Ex. B, Brandler Decl. ¶¶ 8, 13. That Agreement applies to a narrow subset of content that does not encompass the content at issue here. Rather than being applicable to any video clip a subscriber views or downloads, the License Agreement specifically "explains how you can use photos, illustrations, vectors, video clips and Music that you ***license*** from iStock." Farhall Decl., Ex. B (emphasis added). In other words, that Agreement applies exclusively to licensed usage of iStock's content, not a user's personal views or downloads. This is also evidenced by the statement at the top of the TOU: "THIS AGREEMENT GOVERNS ***YOUR USE OF THE ISTOCKPHOTO WEBSITE***. TO LEARN ABOUT ***USAGE RIGHTS FOR OUR ROYALTY-FREE CONTENT***, PLEASE READ OUR CONTENT LICENSE AGREEMENT." *Id*. Ex. C (emphasis added).

In the alternative, iStock claims that Plaintiff should be forced under the TOU to litigate his claims in court in Alberta, Canada under Canadian choice of law. But in doing so, iStock ignores the fact that the Privacy Policy—which is hyperlinked right next to the TOU on the checkout page—incorporates the terms of the Getty Privacy Policy with a ***permissive*** arbitration provision directing users with privacy concerns to first reach out to Getty Images in Seattle, Washington, without limitation on forum or choice of law. Additionally, iStock relies on its License Agreement's terms, but they indicate that customers with a US address will be contracting with Getty (US), Inc. and indicates that Canadian customers will be contracting with Getty (Canada), Inc. In short, it is unclear how an ordinary consumer would have any idea of the appropriate forum to raise their claims (and certainly would not have guessed Canada), which is further crystallized by the fact that in its Motion, iStock itself provides conflicting answers.

## III. LEGAL STANDARD

iStock seeks to compel Plaintiff and the Class to arbitrate their claims in New York, New York. As the movant, iStock "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). To determine

---

[3] *See* https://www.istockphoto.com/legal/privacy-policy (last visited July 11, 2024); https://www.istockphoto.com/legal/terms-of-use (last visited July 11, 2024).

[4] *See* https://www.istockphoto.com/legal/license-agreement (last visited July 3, 2024).

whether a defendant has met this burden, the party opposing arbitration is entitled to the benefit of all reasonable doubts and inferences. *See Three Valleys Mun. Water Dist. v E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir 1991). A court may find an agreement to arbitrate exists as a matter of law "only when there is no genuine issue of fact concerning the formation of the agreement." *Id.* (citation and quotation omitted). The FAA's supposed "presumption in favor of arbitrability does not apply" where "the existence of an agreement to arbitrate" is at issue. *Johnson*, 57 F.4th at 681. Instead, this Court must apply "'general state-law principles of contract interpretation to decide whether a contractual obligation to arbitrate exists.'" *Id.* (quoting *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 743 (9th Cir. 2014)). Thus, California law must be applied to determine whether a valid contract to arbitrate exists.

Under federal law, forum selection clauses are presumed valid. *See The Bremen v. Zapata Off–Shore Co*., 407 U.S. 1, 15 (1972). The presumption of validity may be overcome, however, by a showing that the clause is "unreasonable under the circumstances." *Id.* at 16. "[U]nder United States law, the enforceability of a foreign court selection clause is a matter of judicial discretion." *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627 at 632 (9th Cir.1982). Where a defendant uses contractual provisions to "codify the very 'uncertainty and possibly great inconvenience' that valid choice-of-forum agreements avoid," courts have declined to give forum selection clauses their effect. *See e.g., LG Elecs. Inc.*, 2001 WL 1843715, at *2-3 (declining to apply a forum selection clause which "allows defendant to choose among six fora at will").

## IV. ARGUMENT

### A. The Arbitration Agreement in the License Agreement is Not Enforceable

"The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat' l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (citations omitted). Here, neither condition is satisfied.

#### 1. *Plaintiff Krayzman Never Agreed to Arbitrate His Claims*

In this case, there is no agreement to arbitrate because Plaintiff, through a clickwrap agreement, only agreed to be bound by iStock's Terms of Use and Privacy Policy. And, while the rise of internet-based commerce "has exposed courts to many new situations, it has not fundamentally changed the

principles of contract." *Nguyen v Barnes & Noble*., 763 F.3d 1171, 1175 (9th Cir. 2014). "One such principle is the requirement that mutual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Id*. (citations omitted). "[T]he onus must be on website owners to put users on notice of the terms to which they wish to bind consumers." *Id*. at 1179. Courts will not enforce arbitration agreements where the terms are "tucked away in obscure corners of the website," or "where the terms are available only if users scroll to a different screen, complete a multiple-step process of clicking non-obvious links, or parse through confusing or distracting content and advertisements." *See Wilson v. Huuuge, Inc*., 944 F.3d 1212, 1220–21 (9th Cir. 2019).

In its Motion, iStock claims that, at checkout, "a user is presented with a screen that clearly states that by clicking 'I agree – Pay now' the user is accepting and agreeing to iStock's Privacy Policy and TOU found at the links provided, and ***which links lead to a landing page that contain iStock's Privacy Policy, TOU and License Agreement***." MTC at 2 (emphasis added). Similarly, in the supporting Declaration, iStock claims that the hyperlinks to TOU and Privacy led to a "separate webpage displaying iStock's Privacy Policy, TOU, and Content Licensing Agreement." *See* Farhall Decl. ¶ 6. But notably, iStock does not attach an Exhibit showing this supposed "landing page." That is because the "landing page" iStock describes does not exist. Rather, each of the three agreements has its own individual, separate webpage, with a sidebar that allows you to click through to the webpages for iStock's other legal agreements. *See* Brandler Decl. ¶¶ 8-9. Plaintiff does not dispute that when he purchased his subscription, he had notice of and agreed to iStock's TOU and Privacy Policy (neither of which contained an arbitration agreement) because each of those agreements were respectively hyperlinked directly above the "I agree – Pay now" button that Plaintiff clicked to buy his subscription. *See* Farhall Decl. ¶ 5 and Ex. A.

By contrast—and contrary to the assertion in the Farhall Declaration that "the operative License Agreement was ***linked to the signup page***," *see* Farhall Decl. ¶ 6—the License Agreement is not hyperlinked (let alone even referenced) ***anywhere*** on the checkout page. Brandler Decl. ¶¶ 8-9. Thus, Plaintiff did not assent to its terms. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) ("an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously

manifests his or her assent to those terms”).

Instead, just as in *Wilson*, the arbitration terms in iStock’s License Agreement “are not just submerged—they are buried twenty thousand leagues under the sea.” *See* 944 F.3d at 1221. “Nowhere in the [checkout page] is there a reference to the [License Agreement.]” *Id*. To find the License Agreement, a user must first click on the TOU or Privacy Policy, then navigate from the sidebar to a brand-new page to view the License Agreement, which has “no box for the user to click to assent to the Terms.” *Id*.; Brandler Decl. ¶ 9.

Nor do the TOU or Privacy Policy incorporate the License Agreement by reference. Just the opposite. Each agreement has its own forum selection clause that contradicts the License Agreement’s arbitration agreement. And, the TOU proclaims in capital letters: “THIS AGREEMENT GOVERNS YOUR USE OF THE ISTOCKPHOTO WEBSITE. TO LEARN ABOUT USAGE RIGHTS FOR OUR ROYALTY-FREE CONTENT, PLEASE READ OUR CONTENT LICENSE AGREEMENT.” Farhall Decl., Ex. C. Instead of stating that users are bound by the License Agreement, the TOU instructs users that the TOU alone governs customers’ use of the iStock website, but welcomes them to read the License Agreement to “learn” about usage rights for one type of content iStock offers. Critically, Plaintiff never affirmatively agreed to be bound by the License Agreement and thus cannot be held to its terms.

Finally, a “court cannot compel arbitration outside of its own district.” *Jaiswal v. Dickey’s Barbecue Restaurants, Inc.*, 2024 WL 607370, at *3 (C.D. Cal. Jan. 18, 2024). iStock seeks relief the Court cannot grant: sending the parties to arbitrate this matter in New York under New York law. Under these circumstances, an agreement to arbitrate was never formed and arbitration should not be enforced.

**2. *The License Agreement Cannot Be Reasonably Read to Apply to Plaintiff’s Claims***

“Ninth Circuit authority confirms that where the parties have entered into multiple contracts, it is not sufficient for a party moving to compel arbitration to merely point to an arbitration agreement between the parties relating to one of those transactions, and must instead demonstrate that the parties formed an agreement to arbitrate the particular claims at issue.” *Attia v. Oura Ring, Inc*., 2024 WL 1382464, at *3 (N.D. Cal. Apr. 1, 2024). A court must give the “words of a contract [] their usual and ordinary meeting” and “interpret the meaning of the individual arbitration clauses in connection with the rest of the agreement and not detached portions thereof.” *Johnson*, 57 F.4th at 682.

Here, there are three separate contracts that iStock purports Plaintiff is bound by. First, the TOU states that "by accessing or using this Web site, you agree to these Terms of Use." Farhall Decl., Ex. C. The TOU contains no arbitration clause but instead, directs that: "by accessing this Web site, you acknowledge and agree that all matters relating to access to, or use of this Web site shall be governed by the laws of the Province of Alberta and the federal laws of Canada applicable therein (without reference to conflicts of laws principles). You also agree that any claims or disputes whatsoever arising hereunder shall be submitted to the exclusive jurisdiction and venue of the courts of the Province of Alberta and acknowledge that you do so voluntarily." *Id*. Second, the Privacy Policy states that the "terms of this policy apply to all personal data collected by iStockphoto on the website istockphoto.com and other country-specific iStockphoto websites which may be linked to istockphoto.com." Brandler Decl., Ex. C. That agreement states in bold, italic letters that "***iStockphoto otherwise adopts the Getty Images Privacy Policy which can be found here***" (with a hyperlink to Getty's Privacy Policy). *Id*. The Getty Privacy Policy states "If you have a question or complaint related to our data privacy processes, we encourage you to contact us as indicated at the bottom of this privacy statement. For any complaints that cannot be resolved with us directly, you may refer the matter to JAMS." Brandler Decl., Ex. D. Both the TOU and Privacy Policy (which Plaintiff agreed to upon subscribing) arguably relate to the claims at issue in this case—Plaintiff's use of the website to view videos, and iStock's collection and disclosure of Plaintiff's personal data, *i.e.*, information about the videos Plaintiff viewed.

By contrast, the License Agreement—which Plaintiff did not agree to upon subscribing—applies to a narrower subset of content. Rather than being applicable to any clip a subscriber views, the License Agreement states that "by ***downloading content from iStock***, you accept the terms of this agreement" and "explains how you can ***use*** photos, illustrations, vectors, video clips and Music ***that you license from iStock***." Farhall Decl., Ex. B (emphasis added). The Agreement defines "use" for purposes of the agreement as follows: "to copy, reproduce, modify, edit, synchronize, perform, display, broadcast, publish, or otherwise make use of." *Id*. The Agreement states: "Examples of how you can use licensed content include: websites; blog posts; social media; advertisements; marketing campaigns; corporate presentations; newspapers; magazines; books; film and television productions; web and mobile applications; product packaging." *Id*.

The License Agreement also provides specific restrictions for use of content, such as with respect to political campaigns, resale, electronic templates, and limited print runs. *Id*. It sets forth attribution policies (such as how to include an artist's name in the credits of a visual production), sales tax duties that may be imposed as a result of the use of license content, and who the specific licensing entity is. *Id*.

In other words, giving the "words of a contract [] their usual and ordinary meeting," *Johnson*, 57 F.4th at 682, even if Plaintiff had consented to be bound by the terms of the Licensing Agreement—which he did not—that Agreement applies solely to ***published usage*** of iStock's content, and not a subscriber's personal views or downloads.

The License Agreement also is not incorporated by reference into the TOU. Just the opposite. Each agreement has its own forum selection clause that conflicts with the other. And, instead of stating that website users are ***also*** bound by the License Agreement, the TOU simply invites users to read the License Agreement to "learn" about rights for one specific type of content (royalty-free) that it offers.

This case is on all fours with other cases within the Ninth Circuit where parties entered into multiple agreements and only one agreement contained an arbitration clause, but that agreement did not apply to the dispute. In *Johnson v. Walmart Inc*., the Ninth Circuit held that an arbitration clause contained in the Terms of Use that Plaintiff agreed to when making an online purchase governed his relationship with "Walmart Sites," but could not be read to govern his in-store engagement with Walmart. *See Johnson*, 57 F.4th at 682. Because Plaintiff's dispute arose out of an in-store (not an online) purchase, the Court concluded that "the language and subject matter of the contract make clear that by agreeing to the Terms of Use, Johnson did not assent to arbitrate claims that might arise out of a separate, in-store purchase." *Id*. *See also Attia*, 2024 WL 1382464, at *4 (because the agreement to invest and agreement to advise were "separate and not interrelated," the parties "never formed an agreement to arbitrate the claims at issue in this lawsuit."). The same holds true here. The present dispute relates to Plaintiff's usage of iStock's website to view videos, and iStock's failure to keep that viewing private—it does not relate to Plaintiff's publication or other commercial "usage" of iStock's licensed content. The dispute therefore arises out of the TOU (and arguably, the Privacy Policy) but not the License Agreement.

### 3. *The Delegation and Arbitration Agreements are Unconscionable*

In any case, the arbitration agreement is unenforceable because both the delegation clause and

arbitration agreement are procedurally and substantively unconscionable for the reasons explained below.

a. The Delegation Clause is Unconscionable

"Like any contract, a delegation clause is unconscionable and unenforceable if it is both procedurally and substantively unconscionable." *Tiri v. Lucky Chances, Inc.*, 226 Cal.App.4th 231, 244 (2014). Unconscionability is determined on a "sliding scale," such that "a greater showing of procedural or substantive unconscionability will require less of a showing of the other." *Id*. (citation omitted).

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion' that is offered 'on a take-it-or-leave-it basis'" and focuses on "oppression or surprise." *OTO, LLC v. Kho,* 8 Cal. 5th 111, 126 (2019) (citation omitted). A contract of adhesion contains some degree of unconscionability, and it is not enforceable if it "violates the 'reasonable expectations of the weaker or 'adhering' party…'" *Id.* at 143. Here, not only is the License Agreement a contract of adhesion (*see* Ex. B to Farhall Decl.)[5] and one to which Plaintiff was never asked to agree to and did not agree to (*see* Ex. A to Farhall Decl.), but its application to Plaintiff's claim would defy the reasonable expectation of the weaker party. The delegation clause is also oppressive because, as discussed below, Plaintiff would face high costs just to have the arbitrator address the issue of arbitrability. And, because the TOU specifically states that the TOU governs their use of the website, a reasonable person would have no expectation that his/her relationship with iStock is actually governed by a different agreement.

The delegation clause is also substantively unconscionable for at least the following reasons. *First,* the delegation clause lacks mutuality. Only Plaintiff and other customers are bound by the delegation (and arbitration) provision for "any disputes arising from or related to this agreement" while the Agreement carves out for judicial determination iStock's intellectual property claims (*see* Ex. B to Farhall Decl. at 11.d) and claims for any "further legal remedies" in connection with suspensions of user accounts, without restricting those remedies to arbitration (*see Id.* at 6). [6] "Where the party with stronger bargaining power has restricted the weaker party to the arbitral forum, but reserved for itself the ability to seek redress

---

[5] The License Agreement provides: "By downloading content from iStock, you accept the terms of this agreement." Farhall Decl., Exh. B.

[6] "[I]f iStock determines that you are in breach of this or any other term of this agreement, it may suspend access to your account and seek ***further legal remedies,***" without limiting such legal remedies to arbitration alone. *Id*. at 6.

in either an arbitral or judicial forum, California courts have found a lack of mutuality supporting substantive unconscionability." *Nagrampa v. MailCoups, Inc.,* 469 F.3d 1257, 1285 (9th Cir. 2006) (en banc).

*Second,* Plaintiff must pay Defendant's attorneys' fees and costs if Defendant prevails on the arbitrability issue (*see* Ex. B to Farhall Decl. at 11.d), must pay high filing fees under the applicable JAMS Comprehensive Rules (*see* Rule 31),[7] and must travel to a distant forum (New York) just to challenge the unconscionability of the delegation clause in front of an arbitrator. No reasonable plaintiff would risk having to pay defendant's attorneys' fees and costs, which could easily amount to thousands of dollars, pay hundreds of dollars in JAMS fees, and travel 3,000 miles to New York from their home in California all to challenge a delegation clause. *See Sanchez v. Valencia Holding Co., LLC,* 61 Cal. 4th 899, 920 (2015) (fees provisions are unconscionable if they are unaffordable or "would have a substantial deterrent effect"); *Nagrampa,* 469 F.3d at 1289 (a provision designating Boston as the arbitral forum was unconscionable under California law because it was "only a few miles from [the employer's] headquarters, but three thousand miles away from [plaintiff's] home."); *Gountoumas v. Giaran, Inc.,* 2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) ("[t]o the extent that this provision might shift Defendants' attorneys fees and costs to Plaintiff to even arbitrate the issue of arbitrability, the Court agrees that it would render the delegation provision unconscionable.").

Finally, these unconscionable provisions make the delegation clause void because they do not comport with JAMS' minimum standards of fairness. *See* Ex. F to Brandler Decl.; *see Nguyen v. OKCoin USA Inc.*, 2023 WL 2095926, at *3 (N.D. Cal. Feb. 17, 2023) (holding that if the TOU do not meet the JAMS' minimum standards, "arbitration before JAMS is not available, rendering any delegation clause of JAMS effectively void"); *see also Flora v. Prisma Labs, Inc.*, 2023 WL 5061955, at *5 (N.D. Cal. Aug. 8, 2023) (rejecting the defendant's contention that "'it is unlikely that JAMS would refuse to arbitrate the case' based on the conflict between the forum selection clause and JAMS' minimum standards" because defendant "provides no authority from JAMS or elsewhere to underpin that assumption.").

[7] See Ex. E to Brandler Decl., Rule 31 ("[e]ach Party shall pay its pro rata share of JAMS fees and expenses as set forth in the JAMS fee schedule" and "[t]he Parties are jointly and severally liable for the payment of JAMS Arbitration fees and Arbitration compensation and expenses.")).

b. <u>The Arbitration Agreement is Unconscionable</u>

The Arbitration Agreement is procedurally unconscionable for the same reasons as the delegation provision. As a preliminary matter, the Agreement containing the arbitration clause was not presented to Plaintiff, and is instead hidden on the website. The TOU states that the TOU governs, and Plaintiff was not asked to read or agree to the License Agreement. In order to even arrive at the License Agreement, Plaintiff must click on links within links to get to iStock's contract of adhesion.

The Arbitration Agreement also contains several substantively unconscionable provisions, including those that render the delegation clause substantively unconscionable. *First,* as discussed above, the Agreement lacks mutuality because it requires Plaintiff to submit all his dispute to arbitration, while carving for judicial determination iStock's intellectual property claims (*see* Ex. B to Farhall Decl. at 11.d) and claims for any "further legal remedies" in connection with suspensions of user accounts (*see Id.* at 6). *Second,* as discussed above, the Agreement requires Plaintiff to pay Defendant's attorneys' fees and costs if Defendant prevails on any claim or defense, while this would not be permissible in court under 18 U.S.C. § 2710(c) or Cal. Civ. Proc. Code § 1021.5. *Newton v. American Debt. Services, Inc.,* 549 Fed. Appx. 692, 694 (9th Cir. 2013) (finding substantively unconscionable a provision that increased plaintiffs' "potential liability for attorney fees as compared to California's codified fee shifting regime.") *Third,* the applicable Expedited JAMS Procedures place extreme limits on discovery and briefing: one discovery deposition per side, no expert depositions except by agreement, and dispositive motions are not permitted (*see* Ex. E to Brandler Decl., Rule 16.1, 16.2). These procedures are inadequate to litigate Plaintiff's putative class action VPPA case. *See Fitz v. NCR Corp.,* 118 Cal.App.4th 702 (2004); *Ontiveros v DHL Express (USA),* 164 Cal.App.4th 494, 511-512 (2008). *Fourth,* the Agreement imposes fees and costs that consumers would not have to pay if they were to proceed in court (*see* Ex. E to Brandler Decl., Rule 31). *See Ting v. AT&T,* 319 F.3d 1126, 1151 (9th Cir. 2003) (holding that a cost-splitting provision in a consumer contract unconscionable because "it imposes on some consumers costs greater than those a complainant would bear if he or she would file the same complaint in court."); *Brown v. Quantas Corp.,* 2019 WL 6727503, *6-7 (N.D. Cal. Dec. 11, 2019) (finding some substantive unconscionability based on application of JAMS Comprehensive Arbitration Rules that imposed substantial fees and costs on employee in order to arbitrate that he would not have had to pay in a court

suit). *Fifth,* the Agreement's requires Arbitration in a distant forum (New York), under New York law. *Nagrampa,* 469 F.3d at 1287 ("forum selection or choice of law provisions within an arbitration clause are unconscionable if the provisions are found "unduly oppressive" or to "shield[] the strong party from liability").

In addition, the Agreement has a one-sided limit on damages otherwise available to Plaintiff under the law (18 U.S.C. § 2710(c), allowing liquidated and punitive damages), by making iStock not liable for "any punitive, special, in direct, consequential, incidental or other similar dagames, costs or losses…" *See Chin v. Advanced Fresh Concepts Franchise Corp.,* 194 Cal.App.4th 704 (2011) ("A damages limitation may be unconscionable if it contravenes public policy by limiting remedies available in the statute under which a plaintiff proceeds, or if it is one-sided."). The Agreement imposes a broad indemnity clause, which purports to bind Plaintiff to indemnify iStock, Getty and related entities, from all damages, liabilities and expenses (including attorneys' fees and costs) arising out of in connection with any breach of alleged breach by Plaintiff of any of the terms of the Agreement. In fact, Defendant has already used this provision to threaten Defendant to seek attorney's fees in relation to the filing of this Action, as it has alleged, Plaintiff breached the arbitration provision. Brandler Decl. ¶ 16.

Because "multiple defects" "permeate" the arbitration agreement, this Court should find the entire agreement unenforceable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 89 (2000).

**B. The Forum Selection Clause in the TOU is Unenforceable**

"Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause "that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (quoting *The Bremen v. Zapata Offshore Co*., 407 U.S. at 10).

In the present case, arbitrarily enforcing the forum selection clause in the TOU as a backup option to iStock's unsuccessful attempt to force Plaintiff's claims into arbitration under an entirely different agreement would be unreasonable, unjust, and the epitome of overreaching.

Where multiple agreements permit a defendant to choose their forum at will, courts have found that the forum selection clauses should not be given effect. *See e.g., LG Elecs. Inc.*, 2001 WL 1843715, at *2 ("where the selection agreement allows defendant to choose among six fora at will and at any time

during litigation, the agreement creates uncertainty and possibly great inconvenience and does not provide the 'compelling reason why a private international agreement should be given full effect.'"); *see also Ragab v. Howard*, 841 F.3d 1134, 1136, 1138 (10th Cir. 2016) (finding "no meeting of the minds with respect to arbitration" where the parties entered into six different contracts, each of which contained an arbitration agreement, but the terms of arbitration conflicted and where "no language ... suggest[ed] one contract overrides the others."); *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, 2007 WL 3232276, at *3 (N.D. Cal. Nov. 1, 2007) (finding "that the two conflicting forum selection clauses in the contracts at issue counteract one another, and thus, considered together do not weigh in favor of or against transfer.").

Here, iStock first attempts to bind Plaintiff and the class to an arbitration clause contained in a License Agreement (to which they never agreed) requiring arbitration in New York under New York laws. But, if that doesn't work, iStock argues that its TOU should apply, and the only proper forum is Alberta, Canada, applying Canadian law. Plainly, both of these contentions cannot be true, and the contracting parties thus had no "meeting of the minds" sufficient to enforce either of the agreements at issue. *See Ragab*, 841 F.3d at 1136, 1138 ("there is no language in the six agreements that suggests one contract overrides the others, and we cannot arbitrarily pick one to enforce because doing so could violate the other five.").

Moreover, while iStock argues that Plaintiff accepted the terms of its Privacy Policy (which, like the TOU, was linked on iStock's checkout page), it actively chooses not to invoke the forum clause incorporated into *that* agreement. There is a simple reason for that. The Privacy Policy incorporates Getty's permissive arbitration provision which states that "any complaints that cannot be resolved with us directly, you may refer the matter to JAMS," and does not provide any specific forum or choice of law. In other words, under the Privacy Policy, Plaintiff can bring his claims in any court—including the Northern District of California—but iStock wishes to avoid trial in the United States at all costs. This is not a valid reason to enforce the forum selection clause in the TOU over the permissive language in the Privacy Policy.

Indeed, a reasonable consumer accessing iStock's website would be led to believe that any disputes with iStock should be resolved in the US with Getty Images—which is exactly what iStock's Privacy Policy directs. In the Privacy Policy, iStock indicates that the relevant entity contracting with US

customers like Plaintiff and the putative class is Getty (US) Images, and instructs customers with any privacy-related disputes to contact its legal department in Seattle, Washington—not Alberta, Canada. The company name on istockphoto.com is presented as "iStock by Getty Images." And, when it is convenient for Getty, it has made no effort to distinguish between iStock and Getty for litigation purposes. Instead, it has stated in a public court filings that: "Getty Images makes hundreds of millions of visual assets available to customers throughout the world and in this District [Delaware] via websites, including but not limited to www.gettyimages.com and www.istock.com" and that Getty Images "operates websites for purposes of licensing its works, including, *inter alia*, at www.gettyimages.com and www.istock.com" and is "the owner or exclusive licensee of the copyrights" of content on its website, which includes photographs, videos, and illustrations.[8] Getty also invites contributors to submit and get paid for content and tells them that if their submission is successful "you'll be invited to sign a non-exclusive agreement with Getty Images (US), Inc."[9] iStock's Licensing Agreement also states that Getty Images (US), Inc. is the entity that licenses the content provided on istockphoto.com. And every page on istockphoto.com has a Chat support window where users can request and receive support for technical or other issues they experience on the website. The chat function is handled and processed through Getty salesforce, *i.e.*, customer support for istockphoto.com is handled by Getty. In other words, any website user of iStock who reasonably relied on the representations made on its website would fairly assume that the agreement with Getty Images (*i.e.*, the Privacy Policy) controls.

Enforcement of the forum selection clause contained in the TOU under these circumstances would be the epitome of unfairness. iStock's Motion should be denied.

## V. CONCLUSION

iStock's Motion should be denied in all respects.

Dated: August 8, 2024

Respectfully submitted,

_/s/Julian Hammond_____________
Julian Hammond
Attorneys for Plaintiff

---

[8] *See* Brandler Decl. Ex. B (*Getty Images (US), Inc. v. Stability AI, Ltd. and Stability AI, Inc.,* No. 23-cv-00135, Dkt. 13 (D. Del. Mar. 29, 2023)).

[9] https://www.istockphoto.com/workwithus#faq (last visited July 25, 2024)