SEAN M. SULLIVAN (CA SBN 229104)
seansullivan@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California  90017-2566
Telephone:     213.633.8644

CHASE BEAUCLAIR (CA SBN 327030)
chasebeauclair@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:     206.573.0566

Attorneys for Defendant iStockPhoto, L.P.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LARION KRAYZMAN, individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ISTOCKPHOTO, L.P.,<br><br>Defendant. | Case No. 3:24-cv-03086-VC<br><br>**REPLY IN SUPPORT OF DEFENDANT ISTOCKPHOTO LP'S MOTION TO COMPEL ARBITRATION OR IN THE ALTERNATIVE DISMISS**<br><br>Assigned to the Hon. Vince Chhabria<br><br>Date:       September 5, 2024<br>Time:       10:00 AM<br><br>Action Filed:  May 22, 2024 |

# **TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................................ 1

II. ARGUMENT ............................................................................................................................. 2

    A. Plaintiff's Claims are Subject to Arbitration ............................................................. 2

        1. Krayzman is Bound by the License Agreement ........................................... 2

        2. Krayzman's Claims Fall within the Scope of the Arbitration Agreement .. 4

        3. The Arbitration Agreement is Not Unconscionable ................................... 5

            a. The Delegation Provision is Not Unconscionable ......................... 6

            b. The Arbitration Agreement is not Unconscionable ........................ 8

    B. The Forum Selection Clause is Enforceable ............................................................ 9

III. CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anonymous v. JP Morgan Chase & Co.*,
    2005 WL 2861589 (S.D.N.Y. Oct. 31, 2005) ............................................................................. 6

*B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*,
    2007 WL 3232276 (N.D. Cal. Nov. 1, 2007) ............................................................................. 9

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ..................................................................................................... 2

*Brady v. Williams Cap. Grp., L.P.*,
    14 N.Y.3d 459 (N.Y. 2010) ...................................................................................................... 7

*Brower v. Gateway 2000, Inc.*,
    246 A.D.2d 246 (S. Ct. App. Div. 1998) .................................................................................. 7

*Chalk v. T-Mobile USA, Inc.*,
    560 F.3d 1087 (9th Cir. 2009) .................................................................................................. 6

*Flora v. Prisma Labs, Inc.*,
    2023 WL 5061955 (N.D. Cal. Aug. 8, 2023) ............................................................................ 8

*Gill v. World Inspection Network Int'l, Inc.*,
    2006 WL 2166821 (E.D.N.Y. July 31, 2006) ........................................................................... 7

*Gillman v. Chase Manhattan Bank*,
    73 N.Y.2d 1 (N.Y.1988) ............................................................................................................ 5

*Green Tree Fin. Corp.-Alabama v. Randolph*,
    531 U.S. 79 (2000) .................................................................................................................... 7

*Jaiswal v. Dickey's Barbecue Restaurants, Inc.*,
    2024 WL 607370 (C.D. Cal. Jan. 18, 2024) .............................................................................. 3

*Johnson v. Walmart Inc.*,
    57 F.4th 677 (9th Cir. 2023) ..................................................................................................... 4

*Kamath v. Coinbase, Inc.*,
    2024 WL 950163 (N.D. Cal. Mar. 5, 2024) .............................................................................. 3

*LG Electronics Inc. v. Fritz Transp. Int'l*,
    2001 WL 1843715 (N.D. Cal. Oct. 2, 2001) ............................................................................. 9

*Martinez v. Rumble, Inc.*,
    2023 WL 9473891 (M.D. Fl. Dec. 22, 2023) ............................................................................ 9

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017) ........................................................................................... 2

*Molina v. Kaleo, Inc.*,
    363 F. Supp. 3d 344 (S.D.N.Y. 2019) ...................................................................... 6, 7

*Nayal v. HIP Network Servs. IPA, Inc.*,
    620 F. Supp. 2d 566 (S.D.N.Y. 2009) ......................................................................... 6

*Ragab v. Howard*,
    841 F.3d 1134 (10th Cir. 2016) ................................................................................... 9

*Ragone v. Atl. Video at Manhattan Ctr.*,
    2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008), *aff'd*, 595 F.3d 115 (2d Cir. 2010) .................. 8

*Sandler v. iStockphoto LP*,
    2016 WL 871626 (C.D. Cal. Feb. 5, 2016) .................................................................. 9

*Senisi v. John Wiley & Sons, Inc.*,
    2015 WL 256094 (S.D .N.Y. Jan. 21, 2015) ................................................................. 7

*Serrano v. Cablevision Sys. Corp.*,
    863 F. Supp. 2d 157 (E.D.N.Y. 2012) ......................................................................... 3

*State v. Avco Fin. Serv. of N.Y.*,
    50 N.Y.2d 383 (N.Y. 1980) ......................................................................................... 5

*Stewart v. Paul, Hastings, Janofsky & Walker, LLP*,
    201 F.Supp.2d 291 (S.D.N.Y.2002) ............................................................................. 8

*Tierra Right of Way Servs., Ltd. v. Abengoa Solar Inc.*,
    2011 WL 2292007 (D. Ariz. June 9, 2011) .................................................................. 7

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ..................................................................................... 6

*Whitt v. Prosper Funding LLC*,
    2015 WL 4254062 (S.D.N.Y. July 14, 2015) .............................................................. 7

*Wilson v. Huuuge, Inc.*,
    944 F.3d 1212 (9th Cir. 2019) ..................................................................................... 3

**Rules**

International Mediation Rules, Rule 16 ....................................................................... 10

## I.   PRELIMINARY STATEMENT

Plaintiff admits that he agreed to iStock's Terms of Use ("TOU") and Privacy Policy ("Privacy Policy") when purchasing a subscription. He further admits that when purchasing his subscription, he was presented with a checkout page that contained hyperlinks to the TOU and Privacy Policy; the links to each of which lead to pages that in turn included a link to iStock's Content License Agreement ("License Agreement"). He also admits that the TOU expressly references and specifies the conditions under which a user's conduct would be governed by the License Agreement, *i.e.*, use of content licensed from iStock, and that Plaintiff in fact used iStock's content. Plaintiff instead argues that his claim is not subject to the binding arbitration provision in the License Agreement because: (i) the link to the License Agreement wasn't presented on the checkout page for his subscription, (ii) his claim falls outside the scope of the License Agreement, and (iii) the arbitration provision is unconscionable. Plaintiff then argues that, despite agreeing to the TOU, his claim is exempt from the forum selection clause contained therein because it is unenforceable. Each of these arguments fails.

*First*, Plaintiff agreed to arbitrate his claims when he agreed to the License Agreement. Plaintiff argues he never agreed to the License Agreement because the link wasn't present on the checkout page and the License Agreement is limited to published usage of iStock's content. He is wrong. The link to the License Agreement was conspicuously displayed on the same page as the TOU and Privacy Policy and the conditions for its application were prominently displayed in the TOU. Further, Plaintiff's claim relates to his use of iStock's content (*i.e.* when he "watches and downloads videos on iStock"), Complaint at ¶ 58, which, contrary to Plaintiff's intentional misrepresentation of the definition of "use" in the License Agreement, falls squarely within its ambit. Finally, the delegation clause and arbitration agreement are not unconscionable.

*Second*, to the extent that Plaintiff's claims are governed by the TOU rather than the License Agreement, then Plaintiff agreed to sue iStock (a Canadian company) only in Alberta, Canada. Plaintiff does not dispute that he is bound by the TOU. Plaintiff's only argument is that the forum selection clause is unenforceable because it would be unfair to bind him to the terms of the agreement he admits entering into because iStock has argued he is bound by the terms of the

License Agreement. This is nonsensical and it ignores that the TOU and License Agreement relate to different claims. Further, his assertion that iStock is somehow in the wrong for electing not to proceed with mediation under the terms of the Privacy Policy is both factually and legally wrong.

The Court should grant iStock's motion and compel arbitration, or in the alternative, dismiss the case for *forum non conveniens*.

## II.   ARGUMENT

### A.   Plaintiff's Claims are Subject to Arbitration

#### 1.   Krayzman is Bound by the License Agreement

Plaintiff does not contest, and thus concedes, that the License Agreement is a valid and enforceable agreement. Plaintiff also concedes, as he must, that when he created his iStock account, he agreed to iStock's TOU and Privacy Policy. Plaintiff argues, however, that he is not bound by the License Agreement because the account creation page did not include a separate hyperlink to the License Agreement. Opp. at 5-7. This argument fails because the License Agreement is conspicuously displayed during the account creation process such that a reasonable person would understand that they were assenting to the License Agreement, as well as the TOU and Privacy Policy, when creating their account.

A user is bound by the terms of a clickwrap or sign-in-wrap agreement where "the website provides reasonably conspicuous notice of the terms to which the consumer will be bound[.]" *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022); *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 76 (2d Cir. 2017).[1] As established in iStock's Motion, during the account creation process, a user is presented with a screen that clearly states by clicking "I agree – Pay now" the user is accepting and agreeing to iStock's Privacy Policy and TOU found at the links provided, and which links lead to a landing page that contain iStock's Privacy Policy, TOU and License Agreement. Dkt. 11-2. From this landing page, which displays the full text of either the TOU or Privacy Policy (depending on which link the user initially clicked on), the user can easily

---

[1] Plaintiff relies on California law when arguing that the License Agreement does not demand arbitration here, despite the fact that the agreement is clearly governed by New York Law. Dkt. 11-3 at 19 (Governing Law/Arbitration). But, for the purposes of determining whether Plaintiff assented to the License Agreement, California and New York law are in accord. *Meyer*, 868 F.3d at 74 ("New York and California apply substantially similar rules for determining whether the parties have mutually assented to a contract term.") (internal quotation marks omitted).

navigate between and review each of the three agreements.[2] *See* Dkt. 11-4. Links to the Privacy Policy, TOU and License Agreement are each conspicuously displayed at the top of the page on the left side panel, distinguished from the rest of the text in large font underneath a bolded heading that reads "**Legal agreements**" and are available on iStock's website at all times. *Id*. There is nothing that differentiates how subscribers see and navigate between the Privacy Policy, License Agreement and TOU on the landing page. By including the License Agreement on the landing page that is hyperlinked to the account creation page, iStock gave Plaintiff a "sufficient opportunity to read the [ ] license agreement" when agreeing to be bound by iStock's policies. *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 164 (E.D.N.Y. 2012) (applying New York law).[3]

The sole case that Plaintiff relies on is easily distinguishable. Plaintiff relies on *Wilson v. Huuuge, Inc.*, to argue that the License Agreement was "buried twenty thousand leagues under the sea." Opp. at 7 (citing 944 F.3d 1212, 1221 (9th Cir. 2019)). But in *Wilson*, unlike here, the app did not "require users to affirmatively acknowledge or agree to the Terms before downloading or while using the app[.]" *Wilson*, 944 F.3d at 1214. Instead, to view the terms, users had to "click through to Huuuge Casino's landing page[,]" "click on the small blue text stating 'more' in the app's description[,]" "scroll through several screen-lengths of text to encounter a paragraph that starts with 'Read our Terms of Use,' and includes the text of a link to the Terms[,]" and "copy and paste or manually enter the URL into a web browser to access the Terms[,]" or, after downloading and opening the app, navigate through a drop down menu to find the terms. *Id.* at 1214-15.[4] To the contrary, here, users were required to assent to iStock's Privacy Policy, TOU and License Agreement prior to subscribing and users could easily access all three agreements from the page hyperlinked on the account creation page. Dkt. 11-1 ¶ 5; Dkt. 11-4. The fact that users had to click one of the prominently displayed links on the page to view the License Agreement is inconsequential to whether it was reasonably conspicuous. *Cf. Kamath v. Coinbase, Inc.*, 2024 WL

---

[2] Plaintiff's argument that there is no landing page, but instead separate webpages for each of the agreements and Privacy Policy is irrelevant. Each of the specific webpages include prominent links to the TOU, License Agreement and Privacy Policy.

[3] Plaintiff does not assert that he did not read the License Agreement, nor would that alter the conclusion that he is bound by it. *See* Motion at 6.

[4] The other case Plaintiff cites, *Jaiswal v. Dickey's Barbecue Restaurants, Inc.*, 2024 WL 607370 (C.D. Cal. Jan. 18, 2024), goes to unconscionability, which is addressed below.

950163, at *5 (N.D. Cal. Mar. 5, 2024) (finding landing page with updated terms was conspicuous in part because it "informed users that they could access a summary of the changes by clicking a hyperlink that directed them to an article that depicted those changes.").

Plaintiff's argument that neither the TOU nor the Privacy Policy incorporates the License Agreement by reference, see Opp. at 7, misses the mark entirely. iStock does not assert that the TOU or Privacy Policy incorporate the License Agreement. Indeed, it is iStock's position that the TOU and License Agreement are distinct and cover different interactions with iStock, with the License Agreement covering claims relating to the access, use and download of content from iStock and the TOU covering claims relating to the access to or use of the iStock Website. This is made clear by the notice in the TOU which states: "THIS AGREEMENT GOVERNS YOUR USE OF THE ISTOCKPHOTO WEBSITE. TO LEARN ABOUT USAGE RIGHTS FOR OUR ROYALTY-FREE CONTENT, PLEASE READ OUR CONTENT LICENSE AGREEMENT." Dkt. 11-4. Indeed, the fact that the License Agreement is specifically identified by name, and that both sets of blue highlighted text hyperlink to the License Agreement only reinforces that iStock provided reasonably conspicuous notice of the License Agreement.

### 2. Krayzman's Claims Fall within the Scope of the Arbitration Agreement

Next, Plaintiff argues that his use of iStock's licensed content, which forms the basis of his claim, is not subject to the License Agreement.[5] Plaintiff instead argues that his claims are governed by either the TOU or the Privacy Policy because the License Agreement "applies solely to **published usage** of iStock's content." Opp. at 8-9 (emphasis in original). But this misreading imposes limitations on the License Agreement not present in the text.[6] The License Agreement expressly applies to all "photos, illustrations, vectors, **video clips** and Music that [users] license from iStock[,]" and makes clear that "**every file downloaded** from iStock" is subject to the standard

---

[5] Plaintiff fails to address that the License Agreement delegates all issues of arbitrability, including whether the claims fall within the scope of the agreement, to the arbitrator. See iStock's Motion § III.3.a. By failing to address the delegation issue, Plaintiff waives all arguments to the contrary.
[6] Based on this misreading, Plaintiff argues that the facts here are analogous to the facts in *Johnson v. Walmart Inc.*, where the Court found that an arbitration agreement governing the plaintiff's use of Walmart's online store did not cover claims arising from an in-store purchase. 57 F.4th 677, 682 (9th Cir. 2023). Because the claims here fall squarely within the scope of the License Agreement, as described further in this section, *Johnson* is inapplicable.

License Agreement. 11-3 (emphasis added). The License Agreement states explicitly that users "may use content in any way that is not restricted[,]" and defines "use" to mean "to copy, reproduce, modify, edit, synchronize, perform, display, broad-cast, publish, or otherwise make use of." Dkt. 11-3. Plaintiff ignores that the majority of the listed uses have nothing to do with publication and fails to address the catchall provision that includes any way a user "otherwise make[s] use of" the licensed content. While the definition does include certain uses that relate to publication, there is nothing that suggests the License Agreement is limited to the published usage of its content and does not apply to licensed content that is downloaded and viewed for personal use.

As a result, and unsurprisingly, Plaintiff's claims that arise from his use of iStock's licensed content fall within the scope of the License Agreement. The allegations in the Complaint make this clear. For example, Plaintiff acknowledges that users must "subscribe to iStock in order to ***license and download prerecorded videos*** on www.istockphoto.com[,]" Compl. at ¶ 17 (emphasis added). Plaintiff also alleges that he personally "watches ***and downloads*** videos" from iStock. *See, e.g.*, Compl. 54-58 (emphasis added). Because the License Agreement governs iStock's licensed content, which includes "***every file downloaded*** from iStock", it is clear that Plaintiff's claims relating to the "***license and download***" of videos from iStock are subject to the License Agreement. Compl. at ¶ 17 (emphasis added). Plaintiffs arguments otherwise strain credulity.

### 3.  The Arbitration Agreement is Not Unconscionable

Finally, Plaintiff argues that the delegation provision and the broader arbitration agreement cannot be enforced because they are unconscionable. Opp. at 9-13. As the party resisting arbitration, Plaintiff bears the burden of establishing both procedural and substantive unconscionability. *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10 (N.Y.1988). As such, Plaintiff must show "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *State v. Avco Fin. Serv. of N.Y.*, 50 N.Y.2d 383, 389 (N.Y. 1980). Plaintiff fails on all accounts.[7]

---

[7] As a threshold issue, Plaintiff's arguments on unconscionability fail because Plaintiff relies exclusively on California law to support his arguments. It is well established that

### a. The Delegation Provision is Not Unconscionable

Plaintiff argues that the delegation provision is procedurally unconscionable because it was offered on a "take-it-or-leave-it basis". Opp. at 10. This argument fails because "even if the Agreement was a form contract offered on a 'take-it-or-leave-it' basis … this is not sufficient under New York law to render the provision procedurally unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009); *see also Anonymous v. JP Morgan Chase & Co.*, 2005 WL 2861589, at *6 (S.D.N.Y. Oct. 31, 2005) (finding form contract is "insufficient to render the contract unconscionable, particularly when the plaintiff had the ability to go to other sources of credit.") (applying New York law). Because the delegation provision is not procedurally unconscionable, the Court need not reach substantive unconscionability.

Should the Court do so, however, Plaintiff's arguments is unavailing. Plaintiff argues that the delegation provision is substantively unconscionable because it: (i) lacks mutuality permitting iStock to bring intellectual property claims in court; (ii) imposes costs and inconvenience on Plaintiff; and (iii) does not comport with JAMS minimum fairness standards. Opp. at 10-11.

*First*, the limited carve-out, permitting iStock to bring claims in court to "obtain injunctive or other relief … to protect its intellectual property rights[,]" Dkt. 11-3 at 19 (Governing Law/Arbitration), is not substantively unconscionable under New York law. *See, e.g.*, *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 352 (S.D.N.Y. 2019) ("The provision in the arbitration clause allowing Defendant to seek injunctive relief upon violation of the Loyalty Agreement does not reflect a broader lack of mutuality in Employment Agreement[.]") (applying New York law).[8]

*Second*, Plaintiff argues, without any evidence, that the delegation provision is unconscionable because Plaintiff would have to pay filing fees that he would not incur in court

---

"unconscionability is governed by state law[,]" *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009), and the arbitration agreement is governed by New York law. Dkt. 11-3 at 19 (Governing Law/Arbitration). Because Plaintiff provides no basis for why the choice of law provision does not govern here, any argument to the contrary is waived.

[8] The California law that Plaintiff relies on—which does not control here—is outdated. As the Ninth Circuit noted, "[t]he California Supreme Court has since clarified *Armendariz's* reasoning on this issue in several ways …[and] confirmed that a one-sided contract is not necessarily unconscionable." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1031 (9th Cir. 2016) ("[u]nder this precedent, the provision in the Terms of Service in this case excluding intellectual property claims from mandatory arbitration is not unconscionable.").

and bear the costs of travelling to New York,[9] and may be subject to a fee shifting provision if he is unsuccessful on his claims. Opp. at 11. Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Further, under New York law, court's consider challenges to the costs imposed by arbitration on a "case-by-case basis" considering: "(1) whether the litigant can pay the arbitration fees and costs; (2) what is the expected cost differential between arbitration and litigation in court; and (3) whether the cost differential is so substantial as to deter the bringing of claims in the arbitral forum." *Brady v. Williams Cap. Grp., L.P.*, 14 N.Y.3d 459, 467 (N.Y. 2010). Because Plaintiff has not put forth any evidence of his financial inability to pursue arbitration, or the cost differential between arbitration and litigation in court, his unconscionability argument predicated on the cost of arbitration must accordingly fail.[10] *See, e.g.*, *Molina*, 363 F. Supp. 3d at 351 (plaintiff failed to demonstrate the costs of traveling to a different state were substantively unconscionable); *Whitt v. Prosper Funding LLC*, 2015 WL 4254062, at *7 (S.D.N.Y. July 14, 2015) (Plaintiff failed to carry his burden that the JAMS Rules fee splitting provision was cost prohibitive where plaintiff "ha[d] not submitted any evidence bearing on the likely costs of arbitration[.]"); *Senisi v. John Wiley & Sons, Inc.*, 2015 WL 256094, at *5 (S.D .N.Y. Jan. 21, 2015) (upholding arbitration agreement where plaintiff made "no showing of what financial burdens she might be forced to bear in arbitration" and instead "simply speculate[d] that the costs to her would be exorbitant"); *Gill v. World Inspection Network Int'l, Inc.*, 2006 WL 2166821, at *6 (E.D.N.Y. July 31, 2006) (upholding arbitration agreement where plaintiff "failed to proffer a scintilla of evidence regarding the costs of arbitrating … other than his conclusory statement that it would cause him tremendous hardship").

---

[9] Courts applying New York law enforce forum selection clauses in arbitration agreements against challenges of unconscionability. *See, e.g.*, *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 254 (S. Ct. App. Div. 1998) ("we do not find that the possible inconvenience of the chosen site (Chicago) alone rises to the level of unconscionability[.]"); *Tierra Right of Way Servs., Ltd. v. Abengoa Solar Inc.*, 2011 WL 2292007, at *5 (D. Ariz. June 9, 2011) (finding the arbitration agreement's "forum selection of San Francisco is not unconscionable.") (applying New York law).

[10] Plaintiff notably had no issue with potential costs of pursuing mediation before JAMS. *See* Declaration of Sean M. Sullivan in Support of Reply (the "Sullivan Declaration") ¶ 4.

Finally, Plaintiff argues the delegation provision is void because "these unconscionable provisions" do not comport with JAMS' minimum standards of fairness. Opp. at 11. This argument fails because, as articulated above, the delegation provision is not unconscionable. Further, Plaintiff does not even bother to identify which of JAMS' minimum standards the delegation provision violates, let alone specify how the delegation provision fails to meet these standards.[11] Finally, even assuming certain provisions violated JAMS' minimum standards, the court is empowered to sever those provisions and compel arbitration. *See, e.g.*, *Flora v. Prisma Labs, Inc.*, 2023 WL 5061955, at *7 (N.D. Cal. Aug. 8, 2023) (finding that "because the forum selection provision can easily be severed without affecting any other provision, the Court severs that provision and enforces the arbitration agreement as otherwise agreed upon by the parties.")

### b. The Arbitration Agreement is not Unconscionable

Plaintiff argues that the arbitration agreement is procedurally unconscionable for the same reasons as the delegation provision, which fails for the reasons articulated above. Similarly, Plaintiff argues the arbitration agreement is substantively unconscionable for many of the same reasons, each of which fail here for the reasons articulated above. Opp. at 12.

Plaintiff's sole new argument, that the arbitration discovery procedures are inadequate, also fails. Reliance on the discovery limitation to argue in favor of unconscionability has been soundly rejected by New York courts. *See, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 2008 WL 4058480, at *6 (S.D.N.Y. Aug. 29, 2008) ("it is plainly not the case that simply because an agreement to arbitrate itself … limits the parties' access to discovery, the agreement is substantively unconscionable."), *aff'd*, 595 F.3d 115 (2d Cir. 2010); *Stewart v. Paul, Hastings, Janofsky & Walker, LLP*, 201 F.Supp.2d 291, 292 (S.D.N.Y.2002) ("The suggestion that an arbitration clause is unconscionable because discovery either is unavailable or more limited in arbitration than in litigation is preposterous."). Also, Plaintiff fails to specifically allege how an

---

[11] The License Agreement incorporates the JAMS' Expedited Procedures in its Comprehensive Arbitration Rules and Procedures, which Plaintiff now argues do not satisfy the JAMS' minimum standards. In a case cited by Plaintiff, the court noted that this exact argument was absurd. *Flora v. Prisma Labs, Inc.,* 2023 WL 5061955, at *5 (N.D. Cal. Aug. 8, 2023) (noting "the absurdity of that contention" where the plaintiff was "effectively arguing… that JAMS' Streamlined Arbitration Rules are incompatible with its Consumer Arbitration Minimum Standards.").

inability to conduct discovery or demand production of documents will render him incapable of presenting and proving his case. As a result, Plaintiff cannot meet his burden.

At bottom, the arbitration agreement is neither procedurally nor substantively unconscionable, and Plaintiff failed to carry his burden to show otherwise.

### B. The Forum Selection Clause is Enforceable

If the Court reaches the question of whether Plaintiff's claims fall within the scope of the License Agreement, and determines that they do not, then Plaintiff's claim falls within the scope of the TOU and must be dismissed on *forum non conveniens* grounds. Plaintiff's arguments to the contrary fail. Plaintiff falsely accuses iStock of attempting to cherry-pick which forum applies, but as noted above, iStock has done nothing of the sort.[12] iStock seeks merely to enforce the forum selection clause most applicable to Plaintiff's claim. Moreover, Plaintiff's argument ignores that courts have previously enforced an earlier version of iStock's forum selection clause, *Sandler v. iStockphoto LP*, 2016 WL 871626, at *3 (C.D. Cal. Feb. 5, 2016), and found that claims identical to Plaintiff's could be dismissed on this basis. *Martinez v. Rumble, Inc.*, 2023 WL 9473891, at *2-4 (M.D. Fl. Dec. 22, 2023) (dismissing VPPA class action on the basis of a forum selection clause selecting Ontario, Canada as the exclusive forum).

Plaintiff instead argues that iStock seeks to arbitrarily enforce the forum selection clause as a backup, while ignoring the dispute resolution procedures in the Privacy Policy because they permit Plaintiff to bring his claim in Court. This argument fails for two reasons.

First, unlike the cases cited by Plaintiff where the claims at issue were subject to multiple conflicting agreements,[13] the TOU and License Agreement are distinct agreements that govern

---

[12] Mr. Krayzman's unsupported accusations are unsurprising given his history as a serial litigant who is currently at risk of being declared a vexatious litigant. *See* Sullivan Decl. ¶ 6 Ex. B at 1 n.1.

[13] In *LG Electronics Inc. v. Fritz Transp. Int'l*, the forum selection clause at issue permitted Defendant to choose at its discretion and at any time a number of different forums and it did not limit when the forum had to be selected. 2001 WL 1843715, at *3 (N.D. Cal. Oct. 2, 2001). The Court found this clause unreasonable when Defendant tried to change the forum ten months after the case was filed. *Id*. That is not the situation here. In *Ragab v. Howard* and *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, the plaintiffs' claims fell within the scope of multiple agreements with conflicting forum selection clauses. 841 F.3d 1134, 1136 (10th Cir. 2016) ("The district court found that Mr. Ragab's claims fell within the scope of all six agreements."); 2007 WL 3232276, at *2 (N.D. Cal. Nov. 1, 2007) (Plaintiff brought claims for breach of contract under two separate agreements). Here, the claims fall under one agreement or the other, not both.

separate conduct. The License Agreement governs subscribers' download and use of iStock's licensed content, while the TOU governs general use of the iStock website. If Plaintiff is correct, and his claim does not fall within the scope of the License Agreement and instead arises from his use of iStock's Website, then his claim must be governed by the TOU.

Second, Plaintiff misconstrues the dispute resolution procedures in the Privacy Policy and fails to disclose that iStock was willing to proceed in mediation under the Privacy Policy, if Plaintiff adhered to JAMS' International Mediation Rules.[14] *See* Sullivan Decl. at ¶¶ 5-6. Getty Images' Privacy Policy provides a separate non-exclusive dispute resolution process that permits users to voluntarily submit complaints arising under the policy to JAMS for mediation and, in the event mediation is unsuccessful, arbitration through the Data Privacy Framework Panel. Dkt. 15-5 at 6 (Location of Personal Data, Privacy Shield and Standard Contractual Clauses). Nowhere does this permissive grant permit users to bring claims in court. Because Plaintiff did not initially submit his claims to JAMS mediation, the dispute resolution procedures in the TOU would govern to the extent that the claims arise under either agreement.

Notably, after iStock filed its motion to compel arbitration, Plaintiff attempted to initiate a JAMS mediation via the voluntary dispute resolution process provided by the Privacy Policy. Sullivan Decl. ¶ 4. As required, iStock confirmed that it would proceed with the mediation if Plaintiff dismissed the instant action, as required under the Rule 16 of International Mediation Rules. *Id*. ¶¶ 5-6. Because Plaintiff refused to dismiss the instant action, JAMS declined to proceed with the mediation. *Id*. ¶ 7. Accordingly, Plaintiff's assertion that iStock is avoiding the dispute resolution process provided by the Privacy Policy blatantly misrepresents the facts.

If the Court determines that Plaintiff's claims do not fall within the scope of the License Agreement, and are instead governed by the TOU, then the Court should enforce iStock's forum selection clause and dismiss the claims on *forum non conveniens* grounds.

### III.  CONCLUSION

For the reasons stated, this Court should order Plaintiff to arbitrate his claims pursuant to the License Agreement or dismiss his claims pursuant to the TOU for *forum non conveniens*.

---

[14] Available at JAMS International Mediation Rules | JAMS Mediation, Arbitration, ADR Services (jamsadr.com).

Dated: August 22, 2024

DAVIS WRIGHT TREMAINE LLP

By: /s/ Sean M. Sullivan
    Sean M. Sullivan

Attorney for Defendant
ISTOCKPHOTO, LP